# WISEMAN *v.* SMITH *et al.*

*(Nashville,* December Term, 1936.)

Opinion filed February 13, 1937.

LAWSON H. MYERS, of Fayetteville, for complainant.

WM. C. COOK and EDWIN F. HUNT, Assistant Attorneys-General, for Briggs Smith, Com'r.

JOSEPH HIGGINS and SETH WALKER, both of Nashville, for Tolley, trustee of Moore county.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Waiving matters of pleading in order that we may finally dispose of this case, the question presented is whether that portion of the automobile license tax allocated to road work in the several counties of the state is to be in the custody of the counties instead of the custody of the state pending its expenditure.

Paragraph 3 of section 3184 of the Code provides:

"Half of the net funds derived by virtue of the auto tax shall be distributed equally among all of the counties, the other half of said net funds shall be expended upon such state highways as may be designated by the said commissioner so as to secure as far as practicable the construction and maintenance of other main lines of state highways."

On the first appeal of this case the validity of section 1 of chapter 6 of the Private Acts of 1935 and a purported amendment, chapter 99 of the Private Acts, Extra Session of 1935, was considered. The first of these Private Acts contains this provision:

"All funds received by such counties from the State of Tennessee for highway purposes, including especially that part of the automobile license fund which heretofore has been expended in said counties by the Department of Highways and Public Works and the proceeds of the two-cent gasoline tax for rural roads, as provided by Chapter 45, Public Acts of 1931, shall be paid over to the county trustee of such counties and by him divided into as many equal parts as there shall be road districts in said counties." Section 1.

These Private Acts were applicable alone to Moore county and were held partly unconstitutional by this court on the first appeal of this case. *Wiseman* v. *Smith, Commissioner, et al.,* 170 Tenn., 293, 95 S. W. (2d), 42, 43. This court said that, "All the counties have an equal interest in the distribution and use of the automobile registration revenues and their application to the purposes expressed in the general law that assembles and distributes them. They cannot be diverted from that use by a discriminatory local act. Such discriminatory

legislation cannot be sustained on behalf of a county any more than on behalf of an individual.'' The court had previously said that under the general law ''the allocation of this revenue to the county is made subject to the condition that its expenditure shall be under the direction and control of the state highway department.''

The fourth paragraph of section 3184 of the Code provides:

''The commissioner shall also have the right to designate the roads in the several counties in which the fund to be distributed to the counties as herein provided shall be expended, the character of roads to be constructed and the manner in which the expenditure for construction or maintenance shall be made.''

It is conceded on this appeal that the commissioner of highways is entitled to designate the roads in the several counties on which the distributed fund is to be expended, but it is urged that the custody of this fund should be in the hands of the county trustees, pending expenditure, rather than in the hands of the fiscal officers of the state.

That portion of the fund accrued to Moore county at the time of the original suit had been paid to the trustee of that county and the original suit was brought to require the restoration of such portion to the State Treasury. Said fund is still in the hands of the trustee of Moore county and the chancellor ordered its restoration.

We do not think the contention made for Moore county can be sustained.

Section 3179 of the Code provides that, ''All money accruing from the registration or licensing of automobiles . . . shall be available for the purposes of this statute, and expended under the direction of the commis-

sioner for the construction or reconstruction and for the maintenance of public roads and bridges in the counties of the state.''

Section 3180 of the Code provides that the commissioner ''may execute any highway work or part thereof'' by use of state or county convicts and that the commissioner, if not able to make satisfactory arrangements to construct said highways with state or county convicts, or by contract with other parties, is empowered to build and construct said highways ''either on force account by contract or in such manner as is deemed advisable by said commissioner.''

Section 3181 of the Code confers upon the commissioner ''full power'' to make contracts with the federal authorities for federal aid for the roads and bridges contemplated by the statute, such contracts to be approved by the Attorney General.

In section 3184 of the Code it is again provided that ''all of the funds derived under this statute shall be used by said commissioner,'' and the last paragraph of section 3184 provides that ''the books of said commissioner shall be audited as other departments are audited, or as often as may be required by the governor.''

The repeated provision that all the funds accruing under the statute shall be expended under the direction of the commissioner, the discretion given to the commissioner as to the employment of convict labor or construction on force account, and the requirement that the commissioner shall keep books subject to audit—these things and others necessitate the conclusion that this fund was designed to be kept in the State Treasury to be expended under the direction of the commissioner. The commissioner was required to expend certain pro-

portions of the fund in the several counties on roads designated by him, but we find nothing in section 3179 and subsequent sections of the Code requiring that portions of the fund allocated to the several counties be delivered over to the trustees of those counties. The entire responsibility for the fund and its proper expenditure was imposed upon the commissioner and it could scarcely have been intended to remove the custody of any part of the fund from the fiscal officers of the state.

This conclusion is made clearer by a comparison of section 3179 and subsequent sections with chapter 45 of the Pub. Acts of 1931, which allocated the funds derived from the gasoline tax. Section 1 of that act provides:

"All State moneys appropriated or allotted for the maintenance and improvement of county systems, shall be known as 'County Aid Funds,' to be paid over by the State Comptroller to the trustees of the several counties in the proportion hereinafter directed, to be used by the county highway authorities in building and/or maintaining county road and bridges; provided that any such county highway may be taken over and constructed, improved or maintained as a hard surface road by the State Highway Department out of its own funds."

The Act of 1931 shows how the Legislature goes about the matter when it proposes to relieve the fiscal officers of the state from the custody of funds derived from a state tax.

Some point is made about the form of the chancellor's decree which ordered the trustee of Moore county to pay this fund in his hands over to the commissioner of highways rather than to the comptroller. We do not think this is important for, under section 3184 of the Code, the commissioner is required to turn over all

funds coming into his hands from the auto license tax to the comptroller on or before the fifteenth day of each month. If desired, the decree entered here can go further and require the commissioner of highways upon receipt of this fund to remit same to the comptroller.

Inasmuch as a county trustee can only pay out money in his hands on the warrant of the county judge, in the absence of other statutory authority, it is not easy to see how the state highway commissioner could expend the fund in controversy if it were left in the hands of the trustee of Moore county.

The decree of the chancellor is affirmed with costs.

### SUPPLEMENTAL OPINION.

An additional brief has been filed on behalf of Moore county since the preparation of the opinion herein insisting upon a declaration of the county's rights. This matter was not noticed in the opinion since we assumed from the argument that the real controversy was as to the custody of the funds involved pending distribution. We think the statute declares the county's rights as plainly as the court could do. Each county in the state is entitled to have "half of the net funds derived by virtue of the auto tax" expended for the benefit of roads within that county designated by the commissioner.

Insofar as the cross-bill seeks an accounting against the commissioner of highways, it cannot be maintained in its present form. The cross-bill charges that the highway commissioner has not expended in Moore county as much of the proceeds of the auto license tax as that county is entitled to under the statute. In this aspect, the cross-bill is nothing but a suit for the benefit of

Moore county against a delinquent officer, and section 741 of the Code provides:

"Suits for the use and benefit of any county in this state against any delinquent officer or his sureties, for moneys or funds due such county, shall be brought in the name of the State of Tennessee, for the use of the county for the benefit of which such suit may be brought."